CLEVELAND STATE BANK *v.* COTTON EXCHANGE BANK.

[81 South. 170, Division A, No. 20453.]

1. MANDAMUS. *Plea. General issue.*

A plea of the general issue to a petition of mandamus puts in issue every material allegation in the petition and it was error to strike it from the files.

2. SCHOOLS AND SCHOOL DISTRICTS. *Teachers' pay certificates. Issuance by county superintendent. Fraud.*

Where a county superintendent of education totally fails to comply with Code 1906, sections 4560-4561-4497 (Hemingway's Code,

sections 7376-7377-7574), in issuing pay certificates to persons who had not taught school and with whom no contracts to teach were made and who were not entitled to them, his acts in so doing were fraudulent and void.

3. SAME.

The authority of the county superintendent of education to pass upon the validity of claims for pay certificates only establishes the *prima-facie* right to the payment of such claim or warrant and is not conclusive.

4. SAME.

It is not the duty of a bank being the custodian of county funds to pay a school warrant fraudulently issued by the county superintendent of education, because it has merely ministerial duties, namely to pay warrants which appeared valid on their face.

5. COUNTIES. *County warrants. Negotiable instrument.*

A county warrant is not a negotiable instrument, so that the defense of being a *bona-fide* purchaser for value without notice can be interposed against a charge of fraud in the issuance thereof.

6. ESTOPPEL. *County officers. Validity of warrants.*

A county cannot be estopped by the fraudulent acts of the county superintendent of education in issuing school warrants or teachers' pay certificates to parties who had not taught school nor contracted to do so and where there was no compliance with sections 4560-4561-4497 (Hemingway's Code, sections 7376-7377-7574).

7. DEPOSITORIES. *County depository. Fraudulent warrants.*

For the custodian of public funds of a county to be cognizant that county warrants were fraudulently issued and with these facts before it, to knowingly pay such warrants, would be a gross dereliction of duty on its part.

8. COUNTY. *County warrant as negotiable instruments.*

A county warrant is but a voucher for an indebtedness and since the warrant is not a negotiable instrument, if the indebtedness is unlawful, this defense can be made in a suit upon the warrant, even in the hands of a *bona-fide* purchaser for value.

APPEAL from the circuit court of Bolivar county.

HON. W. A. TALCORN, JR., Judge.

Petition for mandamus by the Cotton Exchange Bank against the Cleveland State Bank. From a judgment ordering a peremptory writ, respondent appeals. See, also, 79 So. 810.

The facts are fully stated in the opinion of the court.

*A. W. Shands,* for appellant.

It appears from the pleadings of this case that the superintendent of public education issued several thousand dollars of pay certificates, certifying that certain parties named had taught certain schools in Bolivar county for certain months during the latter part of the year 1915, and that the clerk of the chancery court issued the warrants of the county on such pay certificates, but did not deliver these warrants to the parties named.

It appears conclusively that none of the persons named had a license to teach school in Bolivar county. It further appears that no contract had ever been made with these teachers to teach any school in Bolivar county. It further appears that no list was ever filed with the chancery clerk containing the names of any of the persons to whom these warrants were made payable, designating them as teachers in Bolivar county; and it further appears that in reality they did not teach the school for the period for which the warrant was issued.

The law requires that before a teacher can receive pay, the county superintendent must issue pay certificate, that the teacher must hold a proper license, must have a proper contract, and must have taught the school.

The superintendent of education is a public official and has no authority except such as is vested in him by the public law of the state, and any act done by him without such statutory power is null and void. This question has been before almost every court in the United States, and it is unanimously held that a public agent cannot bind beyond the scope of his statutory authority. Section 205, Volume 1, Clarke & Skyles on Agency.

To the same effect see *Mayor and City Council of Baltimore* v. *Reynolds,* 83 American Decisions, 535; *Johnson* v. *Frisbie,* 96 American Decisions, 508; *United States* v. *Nicoll,* 1 Paine, 646; *Delafield* v. *State of*

*Illinois,* 26 Wend. 162; *Mayor, etc., of Baltimore* v. *Reynolds,* 20 Md., 1; *Whitesides* v. *United States,* reported in 23 Lawyers Edition, United States Supreme Court Reports at page 882; Rose's Notes which case collates the later cases on this subject.

I refer to the above authorities, indicating the general doctrine. I think, however, the question has been, for a long time, thoroughly settled in the state of Mississippi. I refer the court, first, to the case of the *Supervisors* v. *Arrighi,* 54 Miss. 668, *Klein Case,* 51 Miss. 813, where it is held by the court, Justice CHALMERS delivering the opinion, that a warrant issued by the board of supervisors on a contract for public work, which was actually done, if resulting from the contract not entered into according to the method prescribed by the statute, is unenforcible. *Supervisors* v. *Klien,* 51 Miss. 807; *Beck* v. *Allen,* 58 Miss. 142.

In the case of *McCulloch et al.* v. *Stone,* 64 Miss. 378, the court in a very extreme case upheld the doctrine for which I contend, in opinion delivered by Chief Justice COOPER. *Murdock* v. *Chaffe,* 67 Miss. 740, from which authorities, I contend that if there were a complete absence of Mississippi decisions on the statute prescribing the conditions upon which valid warrants, may be issued to school teachers, the court would be forced to conclude that these warrants in this case are uninforcible; but fortunately we have express decisions in Mississippi upon some of these questions.

It will be noted that among other allegations of the notice under the third plea is the allegation that no one of the persons to whom any of the warrants, payment of which was refused, was issued held a license to teach school in Bolivar county, Mississippi. In this connection, I wish to call the court's attention to the case of *Wayne County* v. *Hooper,* 75 So. 766 (unlawful contract).

It will also be noted that it is alleged in the said third plea, that no contract had ever been made by

the superintendent for the teaching of schools in Bolivar county with any one of the persons to whom these warrants were nominally issued. In the case of *Moore* v. *State,* 65 S. R. 126, it further appears that no list of teachers was ever filed with the chancery clerk containing the names of any of these persons to whom warrants were issued.

The statute, paragraph "m," section 4497 of the Code of 1906, expressly provides that a county superintendent shall issue no pay certificates until he has filed such list in the office of the chancery clerk. This statute is a limitation upon his power to issue a warrant, and until it has been complied with, any warrant issued by him is issued without authority of law, is *ultra vires* and not binding upon the county.

But it will probably be argued that this is a suit by holders of warrants who did not have knowledge of the invalidity of such warrants, and that they had the right to presume that, being issued under the hand and seal of the chancery court, they were valid and binding obligations upon the county. I wish to call the court's attention to the fact that nowhere in the pleadings does any such allegation appear, but, as this argument was made upon the trial in the court below, I anticipate that it will be made here.

In this connection I wish to call the court's attention to the case of *Loomis v. Brown County,* 91 N. W. 309, which expressly holds that an assignee of a county warrant is in no better position than is the assignor.

The doctrine of *caveat emptor* applies with its fullest force to the purchaser of school warrants. See: *Oppenheimer* v. *School District,* 72 N. E. 1100; *Davis* v. *Steuben School District,* 50 N. E. 1; *Kellogg* v. *School District,* 74 Pac. 110; *Fine* v. *Stewart,* 48 S. W. 371; *School Directors* v. *Fogelman,* 76 Ill. 190; Joyce Defenses to Commercial Paper, par. 83; 23 Inc. of Law, page 385, par 2, in notes,

The chancery clerk is only authorized to issue school warrants when the teacher presents to him a proper pay certificate. No lawful pay certificate was presented to the chancery clerk, and he was, therefore, without' authority in law to issue the warrant.

It will be noted from the records that the parties to whom the warrants were issued actually did not teach schools, for the teaching of which warrants were issued to them in payment. Certainly it cannot be held that if the county superintendent sees fit to issue a warrant for the teaching of schools when in fact no school was taught, that the payment of such warrant can be enforced, because the party to whom such warrant was issued must of necessity know of its unlawful issuance, and will not be heard to say that if he accepted such warrant he was not a party to the conspiracy to defraud the county of the common school fund.

I respectfully submit that for all of the reasons above set out, that these warrants are void, and as this case will have to be tried on the proof, I respectfully request of the court a decision on all of the questions presented, because they will come up on the retrial of this case, and in order that litigation may be shortened, I respectfully submit that the court should decide on the sufficiency of each of the matters set up in the notice under the general issue. And for this reason, I have discussed all of the propositions raised.

The court will, no doubt, be surprised on the reading of this record to see that the plea of general issue has been stricken out by a trial court, because it does not show grounds which would warrant the defendant in refusing to pay. I understand that the plea of General Issue, by virtue of section 3234 of the Mississippi Code of 1906, puts in issue every allegation of the petition.

Defendant still occupies the same position and does not now claim any property rights on the subject-

matter of this litigation other than is connected with its duty as a public depository to protect this fund from any unlawful drafts upon it.

Wherefore I respectfully submit that these three causes submitted to you should be reversed and re-- manded.

*J. W. Cutrer,* and *Powell & Mayes,* for appellee.

The real question involved in this case is as to whether or not when the law has given authority to certain officers to issue warrants against the county, requiring them, before issuing the warrants to determine certain facts which are not and cannot be known to the purchasers of the warrants, and the officers appointed by law are designated by the county and required to give bond for the faithful performance of their duty, and those officers pass upon the facts and direct that pay certificates and warrants be issued and the warrants are issued and contained on their face all that the law requires, and subsequently reach the hands of a *bona-fide* purchaser without notice, can the county, under these circumstances, refuse payment of the warrants? This is the question which the court is asked to determine in this case.

Our contention is that the county is estopped, under the above circumstances, from repudiating payment of the warrants. In order for the court to get in touch with the question, it will be necessary to call the court's attention, first, to certain provisions of the code, next, to allegations of the petition for writ of mandamus, and thirdly, to the attempted answer on the part of the appellants.

The superintendent of county public schools and the issuance of the pay certificates to the teachers of the county for services rendered as such, is confided by the statutes of the state to the county superintendents of public education. This county superintendent

of public education, by section 4809 of the Code, is elected by the people. Before entering upon the duties of this office, he is required by section 4812 to give bond for the faithful performance of his duties; this bond not to be less than five hundred dollars and not to exceed two thousand dollars. This is the security which the state takes for the county, for the purpose of indemnifying it on account of the improper conduct of the county superintendent, in the event he does any act which results in the causing of damage to the county. It may be that under the extensive powers given to the superintendent that he may damage the county more than the amount of the bond required to be given by him, but that would be a question for the legislature, and not for the courts.

Under section 4497 (A), it is made the duty of the county superintendent to employ such teachers for the schools under his supervision as may be recommended by the local trustees and require of these teachers that they hold a certificate of proper date and grade, and execute the contract required by other provisions of the Code. Under section 4497 (B) it is made the further duty of the superintendent to examine the monthly reports of teachers and require the signatures of a majority of the trustees, as to the accuracy of the reports, and upon this certified report, issue pay certificates for the salary due for the current scholastic month. Under section 4497 (M) the superintendent is required to file with the chancery and municipal clerks before issuing any pay certificates, a list of the teachers employed, and the monthly salary, as shown by the contract. By section 4541, it is made unlawful for the superintendent to contract with a teacher who does not hold a license for the scholastic year. No penalty is placed on the county superintendent for making a contract with a teacher in violation of the last above section, or for failure to file the list of teachers, and if he did make a contract, issue a pay certificate on which a warrant

was issued, no holder of the warrant could ascertain this fact for himself. Under section 4560, of the Code it is made his duty to make contracts with the teachers for the county. The contracts are to be signed in duplicate, one copy being retained by the superintendent and one by the teacher. It will be observed that this contract made between the superintendent and the teacher is not required to be filed anywhere.

We thus see, so far as we have examined the statute bearing upon the powers and authority of the county superintendent of public education, that he has quite a number of powers and duties, and before exercising his authority is often required by the statutes to ascertain and pass upon certain facts and that as a security to the county that he will exercise his powers and perform his duties in accordance with the purpose and requirements of the law, and as a security to the county against damages for a failure so to do, he is required to give a bond.

Section 4566, which is the section dealing with the issuance of warrants for the salaries of teachers, appoints the clerks of the board of supervisors as the officer to issue the warrants, and make it his imperative duty to issue them upon the presentation to him of pay-certificates duly attested by the county superintendent of public education. The exact language of the statute is as follows.

"Upon the presentation of a pay certificate for services rendered as a teacher, duly attested by the superintendent, the clerk of the board of supervisors or of the municipality being a separate school district, shall issue a warrant on the treasury for the amount stated in the certificate, the warrant to state upon its face the number of the month of the term during which the services were rendered, as, first month, second month, etc., and to specify the fund upon which it is drawn, etc." This statute leaves no discretion in the

clerk as to the issuance of the warrant when a duly attested pay certificate is presented to him.

These are all the sections of the Code which have any bearing on the controversy. In fact, we think that there is but one section which really controls, and that is section 4566, which is a section that requires the issuance of the warrant upon the presentation of the pay certificate. The other sections of the Code referred to will be discussed only for the purpose of showing that the statutes of the state confide to the county superintendent administrative, executive, and judicial duties and in the exercise of these duties, the acts of the superintendent are made conclusive on the county when innocent third parties are affected; that the county must have its recourse on his bond for any malfeasance, and cannot avoid responsibility for the act of its agent to whom it has confided these vast powers when such acts injuriously affect innocent third parties.

Let us see first what administrative, executive, and judicial powers are conferred on the superintendent, By section 4479 (A), he is required to employ for the schools only such teachers as may be recommended by the trustees and hold the proper certificates. These are facts which must be shown to him prior to the employment of any teacher, and of course, prior to the issuance of any pay certificate. There is no place designated by the law where a record of these facts is to be kept, and it will be just as much a violation of the law for the superintendent to employ any teacher without the recommendation of the trustees and without such teacher holding the proper certificate as it would be to permit any teacher to teach in the public schools without the contract provided for by section 4569, and yet, these facts, which must be ascertained and passed upon by the county superintendent, are facts which can only be known to him. Another fact to be passed upon by him of which no record is required to be made is that

he examine the monthly reports of the teachers and reqhire the trustees to certify to the accuracy of the report before issuing any pay certificate. The superintendent is not required to keep a record of this, and there is no place to which a prospective purchaser of the warrant could resort to ascertain these facts.

The superintendent is required to file with the clerk before issuing the pay certificate a list of the teachers, etc., but the failure on the part of the superintendent to file the list does not make the pay certificates issued void, nor is the clerk, under section 4566, required to examine this list before issuing the warrant, as required under the last section, but this section of the Code requires him imperatively to issue the warrant, then the pay certificate is presented to him.

The object in requiring a list of teachers to be filed with the clerk, as set forth in section 4497 (M) is fully explained when considered in connection with subdivision (1). Subdivision (1) requires the superintendent to make his report on the first of October, and this report is to be compared with the pay certificates by the officer. In other words, subdivisions (L) and (M) are not restrictions imposed upon the right of the clerk to issue the warrants on the presentation of the pay certificates, properly issued, nor can the officer whose duty it is, under section 4566, refuse to issue warrants on these pay certificates because of the failure on the part of the superintendent to file these lists. The lists are required to be filed with the clerk for the future information of the county, and not for the guidance of the clerk when pay certificates are presented to him, and warrants demanded.

Section 4541 of the Code has no bearing on the question involved, as it only prohibits contracts being made with teachers who do not hold valid licenses, but whether a teacher holds a valid license or not is a fact to be ascertained by the superintendent, and is not a mat-

ter of public record anywhere. Under section 4560, the superintendent is required to make a contract with the teachers, but this contract is not made a matter of public record; it being a prerequisite to be effected by the superintendent before he issued the pay certificate, and is simply another fact to be determined by him which could not be known to the purchaser of the warrant. His bond stands as guaranty that he will faithfully perform his duties and ascertain the facts required by law to be determined by him, and protect the county, and if he fails to do so, his bond is liable to the county for such damage as it sustains, but the county cannot repudiate its warrants issued upon the pay certificates of the superintendent to innocent holders.

If the contention of the appellants in this case is sound, no warrant can be safely handled and the stability of the county's credit and character will be warped in such a way that its solemn obligations will be shunned as a snare. We have in this case innocent parties holding these warrants, having paid the full value of same; warrants that were issued by the designated agent of the county, held out to the public as being trustworthy, and whose signature to the instruments for which we have paid out our money is not questioned. This agent of the county was given power by law to ascertain certain facts and to adjudicate those facts before the issuance of these pay certificates; facts which were unknown to us and which could not have been known to us after the institution of any sort of inquiry and if the agent of the county has fraudulently determined these facts, his action is no less conclusive upon the county when its obligations have reached the hands of innocent third parties.

We will undertake to show that the authorities cited by appellants' counsel are not in point. This case does not present the question for the public agent exceeding the powers clearly defined by law. It is not a case where

a person is bound with the knowledge of the power of
the public agent, because of some public statute which
could be resorted to for the purpose of ascertaining
those powers. This case presents a question where there
was no way of finding out whether or not the public
agent had fulfilled his duty to his principal, because the
superintendent in this case had acted within the scope
of the power given him by law, and if he had breached
his duty, it was because he has perpetrated a fraud by
adjudicating facts confided to him for determination,
and of which we had no knowledge and could have had
no knowledge. It will be noted that nowhere in the law
which we have referred to the court do the statutes
say that a pay certificate or warrant shall be void if
issued fraudulently, or if issued when the things re-
quired to be determined by the superintendent of edu-
cation have not been properly determined by him, or
complied with. In all the cases cited by appellant there
is a distinction in the law from the case presented by
this record. *State* v. *Lincoln County,* 71 So. 171; *He-
bron Bank* v. *Lawrence County,* 69 So. 209.

We thus see that under the decisions of this court
and under section 4566, of the Code, no discretion is
left in any officer as to the issuance of warrants upon
the presentation of pay certificates. When the pay
certificates are presented, under the above section, the
warrants must be issued. Whether rightfully or wrong-
fully issued is the question of fact committed to the
determination of the executive and judicial officer ap-
pointed by law to determine these facts, and that officer
is the county superintendent of public education, and
when he had adjudicated these facts, his judgment is
conclusive against the county when the result of his
determination would have the effect of working injury
to innocent third parties.

In ruling 10 Case Law, section 41, page 718, sup-
ported by numerous authorities, the text states that:

"When a municipal body has lawful authority to issue bonds on the condition that certain facts exist, or certain facts have been done, and the law intrusts the power to, and imposes the duty upon, its officers to-ascertain, determine, and certify the existence of these facts at the time of isuing the bonds, their certificate will estop the municipality, as against a *bona-fide* holder of the bonds, from proving its falsity to defeat them, etc."

See also, *Independent School District* v. *Rew*, 55 L. R. A. 364; *Hutchinson & S. R. Co.* v. *King Co.*, 15 L. R. A. 401; *Dwight* v. *School Township*, 28 L. R. A. 649; *Flagg* v. *School District*, 25 L. R. A. 363.

In the case on trial, the superintendent of this county had the lawful authority to issue pay certificates on the condition that certain facts existed and certain acts had been done, and the law imposes upon him the duty, before issuing the certificates, to ascertain these facts and determine them, and the county is estopped by his judgment from denying that these facts existed and defeating the warrants in the hands of innocent parties. Its recourse is, and must be, on the bond of the officer who perpetrated the fraud.

When the pay certificate of the superintendent, its' issuance being confided to the superintendent, is presented to the clerk, it is conclusive upon him and he must issue the warrant. A warrant so issued is similar to a bond of the county, and is incontestible in the hands of innocent parties. 5 Cyc. page 797; *Hendricks* v. *Johnson*, 45 Miss. 649; citing 9 S. & M. 77; Code 419; 30 Miss. 507; 15 Barb. 529, 19 Ib. 468; 23 Ib. 338; 5 N. Y. 65; 28 Miss. 38.

We have examined the Mississippi .reports above referred to in this citation, and it is our judgment that the principle announced in the quotation is sustained by the authorities to which opinion refers, but counsel for appellant contend that the case above quoted from

is overruled by two subsequent decisions. We deny this and will undertake to differentiate the case referred to by them and the principle announced by those cases, from the case now under consideration. Counsel contend that the above case is overruled by the case of *Files* v. *McWilliams,* 49 Miss. 578 and *Beck* v. *Allen,* 58 Miss. 143.

Before discussing any of the cases referred to by counsel, let us get one fact in this case, not appearing in any of the other cases to which we shall call attention, clearly in the minds of the court. This is not a case where an officer or a body of officers have their powers clearly marked out by statute. It is not a case where an innocent part may take the result of the action of the officer appointed by the county to act for it and go to the statute or any public record and there find that this public agent had violated his duty. In order to find whether the public agent has violated his duty, a resort to the law would simply disclose the fact that he was acting within the scope of powers intrusted to him under the law, but whether he had acted in good·faith or not was a question of fact that lay beyond any statute or public record, and was one which must be determined by the officer himself. This makes the distinction between the conclusiveness of a warrant issued by such a public officer and a warrant issued by another public officer whose powers and limitations are clearly prescribed by law and may be found out by resort to the statutes or public records. The case of *Files* v. *McWilliams,* 49 Miss. 579, was simply a case of the illegal allowance made by the board of supervisors of the county, in violation of a statute clearly ·prescribing their powers, and providing that it should be unlawful for the board to make any allowance not authorized by the statute. To the extent, therefore, that the case in 45th Mississippi holds that the treasurer is bound to pay every warrant drawn

upon him, whether in violation of a statute or not, it may be said that the Hendricks case is overruled, but this does not affect the principle for which we contend and which is decided in the Hendricks case, that the payment of a warrant cannot be refused when properly drawn, where the drawing of the warrant depends upon some fact to be ascertained by the officer before the issuance of the warrant. A warrant can be refused only when it violates the law and not where it appears to be regularly drawn under the law, but is improperly issued because of the fraudulent determination of a fact, which fraud is unknown to the party holding the warrant.

The case of *Beck* v. *Allen,* 58 Miss. 143, is the same character of case of the Files case. In the Beck case there is not found any support for the contention of appellants. It is simply a case where a bill is filed, enjoining the collection of taxes and the question came up as to the validity of the action of the board of supervisors in making the assessments. The question of the validity of warrants was incidentally involved, it being charged in the bill that certain warrants were illegal because the allowances were not made in accordance with the provisions of certain sections of the statute referred to. This statute prohibited the clerk from issuing warrants on allowances made in disregard to its provisions. In other words, here was a law which provided that warrants issued in violation of its should be void. There is no such law involved in the statutes we are discussing.

The court will see that it is intimated very strongly in this case that even where the statute prohibits the issuance of warrants in disregard of its provisions, that where these warrants were issued they would be good in the hands of persons holding them without notice. Counsel can take very little comfort from the Beck case. We claim that it is an authority supporting

our contentions and in addition, there is a difference in the case.

Counsel cite volume 1, section 205 of Clarke & Sykes on Agency as to the authority of public agents. It is not our purpose to take issue with the text of the authority referred to above, but we deny its application to this case. There was no want of power on the part of the superintendent to issue these pay certificates, nor was there any lack of power on the part of the clerk when he received the pay certificates to issue the warrants, but it is made his imperative duty to do so, and the clerk could not question the validity of the pay certificates or refuse to issue the warrants.

The only question in this case is as to whether or not the fraudulent act of the superintendent in the determination of facts prior to the issuance of the certificates can be used as a defense to the warrants when issued. This very authority says: "The government or other public party is not bound by acts, declarations, or misrepresentations of its agent, unless it manifestly appears that the latter is acting within the scope of his authority, or that he is held out as having the authority to do the act, or is employed in his capacity as a public agent to make the declaration or representation for such body."

To the same effect is the case of *City of Baltimore* v. *Reynolds,* 83 Am. Dec. 535, and *Johnson* v. *Frisbie,* 96 Am. Dec. 508. All these authorities cited by counsel are in our favor; so also is the case of *Pierce* v. *United States,* referred to by counsel for appellant, and also the case of *Whitesides* v. *United States,* 23 L. E. 882. In the citation of these authorities, counsel overlooks the very important statement in each of the authorities cited by them which fails to estop the county, only where there is a lack of specific power to make it, or when it does not appear that the agent was held out as having the authority or being

employed in his capacity as agent to make the declaration or representation or to do the act by which the government is sought to be estopped. This very important distinction and exception to the general rule as to public agents is the very thing which brings the case now on trial within the exception and estops the county.

Counsel next cites the case of *Supervisors* v. *Arrighi,* 54 Miss. 668, but which we contend is not in point here, because when the court examines that case it will see that the warrant issue in it of which payment was sought by mandamus was issued by the board of supervisors in violation of a plain statute, and this statute rendered all contracts made in violation of it void. See part of opinion 54 Miss. 671.

In the case of *McCulloch* v. *Stone,* 64 Miss. 378, the court said nothing adverse to our contention now. We thus see that the court intimates very strongly that upon questions of fact, the decision of the auditor would be conclusive. See also page 392, same authority. This case is really more in our favor than against us, but is not in point in any way.

The case of *Murdock* v. *Chaffe,* 67 Miss. 740, has no bearing on the question involved in this case, as the court will see upon the examination of that case. The case of *Wayne County* v. *Cooper,* 76 So. 766, has nothing in it that would be helpful to the court indeciding this case, and we will not weary the court by an analysis of it, for the court will see, upon reference to it, that it does not remotely throw any light on the issue here. We have examined the case of *Moore* v. *State,* 65 So. without being able to discover any feature of that case which has any bearing on this one.

Counsel for appellant contend that the doctrine of *caveat emptor* applies to all purchasers of school bonds, and cites the case of *Loomis* v. *Browne Co.,* 91 N. W. 309; *Oppenheimer* v. *School District,* 77 N. E. 1100;

*Davis* v. *Steubbin School District,* 50 N. E. 1, and other authorities. As counsel has placed these authorities in his brief we will not repeat them here, but we have examined each of the cited cases and find that in each authority bearing upon the doctrine of *caveat emptor,* the case is based upon a fact which shows that the warrant was drawn in express violation of a public statute. Of course, in such case, the purchaser of the warrant is bound to take notice of the law and if the warrant is issued in violation of a plain statute making the warrant so issued void, then in such case, the purchaser takes the warrant at his own risk. This is not true of the case at bar, however, as these warrants were not drawn in violation of any statute. Any purchaser of these warrants, upon investigation, would have found them to be regular and issued in all respects in conformity to the direction of the law.

If these warrants were fraudulent, it was because of the false certification of facts by the tribunal designated by the legislature to try the facts. The doctrine of *caveat emptor* applies only in cases where, under the law, the public agent exceeds his statutory powers.

Counsel for appellant make some point on the fact that the trial court struck out the plea of general issue. Our contention is that the pleadings are to be considered in their entirety and the question argued in the trial court on all the pleadings was as to the soundness of the defense attempted to be made by them. The court held that the plea did not constitute any defense and it followed from this, the appellant declining to plead further, that judgment should be rendered, in favor of appellees.

It is the desire of both parties that this case be decided upon its merits and not upon technical questions and that is what the trial court did. We earnestly insist that this case be affirmed.

Sykes, J., delivered the opinion of the court.

The appellee, Cotton Exchange Bank, filed a petition in the circuit court of the Second district of Bolivar county, for a writ of mandamus to compel the appellant, Cleveland State Bank, to pay a number of school warrants owned by the appellee. A list of these warrants is made Exhibit A. to the petition, and the amount in all aggregates the sum of four thousand two hundred and sixty-seven dollars. These warrants were drawn by the clerk of the board of supervisors, and issued by him because of pay certificates issued by the superintendent of education of this county to parties named therein. The petition alleges that it was the duty of the appellant bank, which is the custodian of all of the county funds and especially of this fund, to have paid these warrants: that there was sufficient money on deposit with this bank to pay them. The petition further alleges that the warrants were duly presented for payment, and payment was refused. It is also alleged that appellee is the owner for valuable consideration in due course of these warrants. There were some special pleas filed to this petition to which demurrers were sustained. Leave of court was then granted the appellant bank to file additional pleas. Appellant then filed a plea of the general issue, and under it gave the following notice:

"Plaintiff will take notice that under the foregoing plea of general issue, defendant, if it should decide so to do, will show:

"First. That there was no contract made, as provided by law, between the county superintendent of education of Bolivar county, Miss., and any one of the persons named in Exhibit A to plaintiff's petition to teach school in Bolivar county, Miss., during the scholastic year 1915-16.

"Second. That none of the persons named in Exhibit A taught school in Bolivar county, Miss., for the

month and in the school for which warrants listed in Plaintiff's Exhibit A were issued as payment.

"Third. That no list of teachers, including the names of any of the persons listed in Exhibit A to plantiff's petition was ever filed by the county superintendent of education in the office of the clerk of the chancery court of Bolivar county as a list of teachers of public schools in Bolivar county for the scholastic year 1915-16.

"Fourth. That the alleged pay certificates mentioned in plaintiff's petition were issued without any authority of law, in that the persons listed in said Exhibit A did not teach school during the months for which such pay certificates purported to be payment, and no contracts were ever made by any one of said teachers to teach· such school, and the name of such person never appeared on any list of teachers filed by the county superintendent in the office of the chancery clerk.

"Fifth. The said warrants listed in Exhibit A were issued by the chancery clerk of Bolivar county, Miss., without authority in law, in that they were issued on pay certificates payable to persons whose names did not appear on the list of teachers of Bolivar county in his office for the scholastic year 1915-16.

"Sixth. That said persons named in said Exhibit A did not present any pay certificate to the chancery clerk and the warrants listed herein were never delivered by the chancery clerk to the persons named therein.

"Seventh. Defendant has therefore at the suit of *Stones* v. *Robertson,* state revenue agent, been by decree of the chancery court of the second district of Bolivar county, Miss., perpetually enjoined from paying said warrants, said suit being number———in said court, said decree being issued at the July, 1916, term of said court to which decree reference is hereby made as fully as if copied herein.

"Eighth. None of the warrants listed in Exhibit A to plaintiff's declaration were issued to persons holding

license to teach school in Bolivar county, Miss., for the scholastic year 1915-16."

A motion by appellee was made and sustained, striking this plea and the notice thereunder from the files. It is unnecessary to set out the grounds of this motion. It is the contention of the appellee in this court that the notice under the general issue did not present a legal defense. to the petition, and that the action of the court below was proper in sustaining the motion to strike the notice. Appellee does not seriously contend that the court was correct in striking the plea of the general issue from the files. Appellant declining to plead further, judgment final was entered in favor of appellee, and the peremptory writ of mandamus ordered to be issued. From which judgment this appeal is prosecuted.

Learned counsel for the appellee, in speaking of the action of the lower court in striking the plea of the general issue with the notice thereunder from the files, says that the pleadings are to be considered in their entirety, and the question argued in the trial court on all the pleadings was as to the soundness of the defenses attempted to be made by this notice; that the court held that the pleadings of defendant did not constitute any defense, and therefore struck the plea as well as the notice from the files. The plea of the general issue put in issue every material allegation in the petition, and it was error under any view of the case to strike this plea from the files.

The contention of the appellee in this case is stated in its brief as follows:

"The real question involved in this case is as to whether or not when the law has given authority to certain officers to issue warrants against the county, requiring them, before issuing the warrants, to determine certain facts which are not and cannot be known to the purchasers of the warrants, and the officers appointed by law are designated by the county and re-

quired to give bond for the faithful performance of their duty, and those officers pass upon the facts and direct that pay certificates and warrants be issued, and the warrants are issued, and contain on their face all that the law requires, and subsequently reach the hands of a *bona-fide* purchaser without notice, can the county, under these circumstances, refuse payment of the warrants? This is the question which the court is asked to determine in this case. Our contention is that the county is estopped, under the above circumstances, from repudiating payment of the warrants."

Again counsel for appellee say:

"This case does not present the question of the public agent exceeding the powers clearly defined by law. It is not a case where a person is bound with the knowledge of the power of the public agent, because of some public statute which could be resorted to for the purpose of ascertaining those powers. This case presents a question where there was no way of finding out whether or not the public agent had fulfilled his duty to his principal, because the superintendent in this case had acted within the scope of the power given him by law, and, if he had breached his duty, it was because he had perpetrated a fraud by adjudicating facts confided to him for determination, and of which we had no knowledge, and could have had no knowledge."

The notice, given under the general issue, sets out facts which, if proven, show that the county superintendent of education fraudulently issued pay certificates to certain persons who were not entitled thereto. That no contracts for teaching school were entered into with these persons, and that no schools were in fact taught by them for the months specified on the pay certificates. Without specifically repeating the facts alleged in this notice, these facts, if proven, show that this action on the part of the county superintendent was fraudulent. The county superintendent of education, under section

4560, Code of 1906, section 7376, Hemingway's Code, can only make a contract with a licensed teacher, and under this same section of the Code it is made unlawful to issue a certificate for services to a teacher rendered before the contract is made and signed, except under certain conditions.

The powers of the county superintendent of education with whom he may make contracts, and the manner in which these contracts are to be made, and the condition under which he is authorized to issue pay certificates, are specifically and carefully enumerated in sections 4497, 4560, and 4561, of the Code of 1906 (sections 7574, 7576, and 7577, Hemingway's Code).

The pleadings in this case show a total failure on the part of the county superintendent to comply with these sections of the Code. They show an entire absence of either real or apparent authority on his part to issue pay certificates upon which the warrants were issued by the clerk of the board of supervisors. It is true that the statutes authorize the county superintendent to issue pay certificates to teachers with whom contracts have been made and who have taught school, but these statutes carefully limit the authority of the county superintendent of education to issue these certificates under the conditions named in the statute. This is not a case where there has been a substantial compliance with the statute, nor where there has been some mere irregularity in complying with the law; but the pleadings present a case where the county superintendent has fraudulently issued pay certificates to certain persons who have not taught school, with whom no contracts were made, and who are not entitled to them.

The specific power vested in the county superintendent of education is to make contracts with only licensed teachers, and then to issue pay certificates to them only after the contract has been made and signed. Consequently in this case there is an entire absence of

892  State Bank *v.* Exchange Bank. [Sup. Ct.

Opinion of the court.   [119 Miss.

specific statutory authority for the superintendent to have issued pay certificates. The county superintendent of education has no real nor apparent authority to fraudulently issue pay certificatest.

It is not contended in this case by the appellee that the persons to whom these warrants were issued could collect them, but it is insisted that the appellee is a bona fide purchaser, and that the defenses relating to the invalidity of these warrants cannot be set up against it.

In the case of *Wayne County* v. *Hopper,* 114 Miss. 755, 75 So. 766, in construing section 4541 of the Code of 1906 (section 7799, Hemingway's Code), this court, through ETHRIDGE, Justice, held that a contract with one who was not a licensed teacher was unlawful, and that, though the party had taught school, he could not recover under his contract.

In the case at bar, under the pleadings, no contract was made, no services rendered, and the names of the persons to whom the warrants were issued do not appear on the list furnished the clerk of the board of supervisors.

While conceding that. the pleadings make out a case of unlawful and fraudulent issuing of the pay certificates, counsel contend that appellee, being a purchaser for value of the warrants, is protected because there was specific statutory power given the superintendent to issue the pay certificates, and the clerk of the board of supervisors to issue the warrants. The authority of public agents to bind their principles is well stated in section 205, vol. 1, Clarke & Sykes on Agency. In that section it is stated that:

"The fact that the act done or contract made by a public agent related to a subject within the general scope of his powers does not make it obligatory upon the principal, if there was a want of specific power to do or make it."

And in section 210 of the same authority the rule is laid down that it is the duty of one dealing with a public agent to ascertain from the laws and other public records the authority of the agent, and that he is acting within the authority expressly given him. It is stated:

The fact that the contract made or act done related to a subject within the general scope of the agent's powers does not make it obligatory on the principal, if there was a want of specific power to make it."

To the same effect are *Mayor, etc.,* v. *Reynolds,* 20 Md. 1, 83 Am. Dec. 535; Story on Agency, section 307a; *Johnson* v. *Frisbie,* 29 Md. 76, 96 Am. Dec. 508.

It is earnestly insisted by counsel for appellee that under the law the county superintendent is given the exclusive authority of passing upon the validity of the claims for pay certificates, and that his action in issuing the pay certificates is in the nature of a judgment; that the claim is a valid one. This authority, however, only establishes the *prima-facie* right to the payment of the claim or warrant, and is not conclusive. *Wall* v. *Monroe County,* 13 Otto (103 U. S.) 74, 26 L. Ed. 430.

In the case of *Board of Supervisors* v. *Arrighi,* 54 Miss. 668, the court said:

"A county warrant is a valid judgment only in cases where the board of supervisors had legal authority to issue it, or to contract the obligation in settlement of which it was issued; but it imposes no liability when issued in violation of law, or in fulfillment of a contract that the board was prohibited from entering into. The original contract being a nullity and imposing no liability upon the county, it is not possible for the board of supervisors, by the issuance of a warrant, to create one."

See, also, *Beck* v. *Allen,* 58 Miss. 143.

The contention of the appellee that it is the duty of the appellant bank to pay this claim because it has

merely ministerial duties, namely, to pay warrants which appear valid on their face, is not sound. The authority cited by counsel for this position is the case of *Hendricks* v. *Johnson*, 45 Miss. 649. In the Johnson Case, however, it will be noted that the court expressly said that the charges of fraud were not sustained. The facts did not show fraud. However, regardless of that question in the Johnson Case, the precise point under consideration was modified or overruled in the case of *Files* v. *McWilliams*, 49 Miss. 578. The opinion in the Files Case was written by the same judge who wrote the opinion in the Johnson Case, and also further modified by the decision of the court in the case of *Beck* v. *Allen*, 58 Miss. 143.

The contention that the appellee is a *bona-fide* holder or purchaser for value without notice, and that these defenses cannot be interposed as to it, is unsound. A county warrant is not a negotiable instrument. 3 R. C. L. section 25; 15 C. J., p. 602; Section 310; *Wall* v. *Monroe County, supra, Bank* v. *School Trustees*, 1 N. D. 26, 44 N. W. 1002, 26 Am. St. Rep. 605.

In the absence of statute, the universal rule announced in all the text-books and court decisions is to this effect. In the citation from volume 15, C. J. above made, speaking of assignment and negotiability of county warrants, it is stated:

"While it is the rule, even as to those made payable to bearer, that county warrants, certificates, and orders are not negotiable in the sense of the law merchant so as to shut out in the hands of a bona fide purchaser inquiries as to their validity or to preclude defenses or set-offs which could be made to them in the hands of the original parties, they are subject to those equities only which exist between the county and the original payee, and, except in some jurisdictions, they are assignable so as to invest the assignee with the rights and remedies of the assignor as to collection and suit, provided such

assignment be made in the form prescribed by statute."

The case of *Bank* v. *School Trustees,* 1 N. D. 26, 44 N. W. 1002, 26 Am. St. Rep. 605, *supra,* is one very much in point. In that case a school warrant was issued to a teacher who held no lawful certificate to teach. The statute of North Dakota provided that any contract made in violation of its provisions was void. The statute of Mississippi provides such a contract to be unlawful. The North Dakota supreme court held that there was no consideration for the issuance of the warrant in that case; that the teacher had no claim, because she could not be employed to teach under the statute. In that case the plaintiff claimed as an innocent purchaser for value. The court held that the warrant was not negotiable in the sense that negotiation would cut off defenses; that the purchaser bought at his peril. It was also claimed in that case, as it is claimed here, that the county is estopped by the act of the officers in issuing warrants. This opinion so well states the correct rule with reference to the question of estoppel that we herewith quote it:

"Nor is the doctrine of estoppel applicable. Could town officers in this manner estop a municipal corporation, void acts—acts void because expressly forbidden by the sovereign—would have validity, and the will of the legislature would be nullified by the conduct or statement of mere municipal agents."

In the case under consideration the acts of the superintendent were not performed in good faith under a mistaken idea as to his power or authority, but, according to the pleadings, were fraudulent, deliberately perpetrated to defraud the county. Under these conditions there can be no estoppel whatever on the part of the county. Since the attention of the custodian of these funds has been called to these facts, it was its duty to defend his lawsuit. For the custodian of the

public funds of a county to be cognizant that county warrants were fraudulently issued, and, with these facts before it, to knowingly pay these warrants, would be a gross dereliction of duty on its part.

A warrant is but a voucher for an indebtedness, and since the warrant is not a negotiable instrument, if the indebtedness is unlawful, this defense can be made in a suit upon the warrant, even in the hands of a *bona-fide* purchaser for value. This rule is correctly stated in the case of *Mayor, etc.,* v. *Ray,* 19 Wall. 468, 22 L. Ed. 164, as follows:

"But every holder of a city order or certificate knows that, to be valid and genuine at all, it must have been issued as a voucher for city indebtedness. It could not be lawfully issued for any other purpose. He must take it, therefore, subject to the risk that it has been lawfully and properly issued. His claim to be a bona fide holder will always be subject to this qualification. The face of the paper itself is notice to him that its validity depends upon the regularity of its issue. The officers of the city have no authority to issue it for any illegal or improper purpose, and their acts cannot create an estoppel against the city itself, its taxpayers, or people."

The pleadings of the appellant in this case state facts which, if proven, show that the conduct of the county superintendent was fraudulent, unlawful, and not within the specific powers intrusted to him under the statutes. It was the duty of the appellant bank to set up these defenses; and, if they can be proven, they are valid defenses to the suit of an innocen*t bona-fide* purchaser for value without notice.

The lower court erred in striking the plea of the general issue and the notice thereunder from the files. There were other motions and pleas filed in the case, but they are not material to the questions presented on this appeal, and for that reason have not been dealt

with in this opinion.   The judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.